J-S28045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LLOYD RICHARD THOMAS | |
| Appellant | No. 1751 MDA 2014 |

Appeal from the Judgment of Sentence March 3, 2014
In the Court of Common Pleas of Susquehanna County
Criminal Division at No(s): CP-58-CR-0000092-2012

BEFORE:  BOWES, J., ALLEN, J., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:              **FILED JULY 06, 2015**

Lloyd Richard Thomas appeals from the judgment of sentence imposed by the Court of Common Pleas of Susquehanna County, following his convictions for two counts of voluntary manslaughter,[1] possession of drug paraphernalia,[2] and possession of a small amount of marijuana.[3]  Upon review, we affirm.

On February 11, 2012, Thomas shot and killed Gilberto Alvarez and Joshua Rogers after they came onto Thomas' father's property in Susquehanna County.  Alvarez and Rogers had driven by the property earlier

---

[1] 18 Pa.C.S. § 2503(b).

[2] 35 P.S. § 780-113(a)(32).

[3] 35 P.S. § 780-113(a)(31).

in the day and believed that the Ford Mustang in which they were driving had been shot. Rogers and Alvarez returned to the area to investigate. They spoke with a neighbor who told them shots were fired earlier in the day from the direction of Thomas' father's property.

Alvarez and Rogers approached the property through a wooded area. The two men decided to split up and Alvarez approached the front of the house while Rogers went around the back. Rogers carried a shotgun, which he did not fire.

Thomas spotted Alvarez first and shot him while Alavarez was approximately 61 feet from the house. Thomas then made his way through the house to the rear deck where he shot several times at Rogers, once striking Rogers' gun and subsequently fatally shooting Rogers as he retreated from the property.

Upon questioning by law enforcement officials, Thomas did not claim that either victim threatened him in any manner. He simply stated that he saw Alvarez emerge from the woods and reacted to the situation.

A preliminary hearing was held on February 22, 2012. Two open counts of criminal homicide were transferred to criminal court. A jury trial commenced on January 13, 2014. Following jury selection, the court allowed the amendment of the pending charges to include one count of possession of drug paraphernalia and one count of possession of a small amount of marijuana.

On January 16, 2014, the jury found Thomas guilty of the aforementioned offenses. On March 3, 2014, the court sentenced Thomas to an aggregate term of 6 to 12 years' incarceration, followed by 8 years of probation. Thomas filed a post-sentence motion seeking a new trial, which the court denied on June 9, 2014. This timely appeal followed.

On appeal, Thomas presents the following issues for our review:

1. Did the trial court err in failing to award [Thomas] a new trial on the charges of voluntary manslaughter when said verdicts were against the weight of the evidence?

2. Did the trial court err by allowing the amendment of the informations after the jury was selected and seated to include charges of possession of drug paraphernalia and possession of a small amount of marijuana thereby resulting in prejudice to [Thomas]?

3. Did the trial court erred [sic] by denying [Thomas] a new trial where [the] Commonwealth provided information to the defense after the verdict was rendered when said information was material to the question of whether the victims were the aggressors in this instance?

Brief of Appellant, at 7.

In his first issue, Thomas argues that the voluntary manslaughter verdicts were against the weight of the evidence. Our standard of review of a weight of the evidence claim is as follows:

The finder of fact is the exclusive judge of the weight of the evidence, as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. Our appellate courts have repeatedly emphasized that one of the least assailable reasons for granting or denying a new

trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

Furthermore,

[W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Rabold***, 920 A.2d 857, 860-61 (Pa. Super. 2007) (citations and quotations omitted).

Additionally, pursuant to the Pennsylvania Crimes Code, "[a] person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify killing . . . but his belief is unreasonable." 18 Pa.C.S. § 2503(b).

Thomas claims he shot Alvarez and Rogers in self-defense. At trial, it was determined that Alvarez and Rogers approached Thomas' residence in a non-confrontational manner. While Alvarez was still 61 feet away, Thomas shot him through the side of the head at a time when the victim was not even looking at him. Thomas then fired a number of shots at Rogers. One bullet struck the gun Rogers was holding, which was turned away from Thomas and pointed at a downward angle. Based upon forensic evidence, Thomas shot Rogers as he was attempting to retreat from the residence.

The jury concluded that Thomas was in fear for his life, but that his fear was not reasonable. Based upon the uncontested evidence, we discern

no abuse of discretion by the trial court and do not find the verdict to be so contrary to the evidence as to shock one's sense of justice.

In his second issue, Thomas argues that trial court erred when it added the charges of possession of drug paraphernalia and possession of a small amount of marijuana to the criminal information after jury selection. Pennsylvania Rule of Criminal Procedure 564 states:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as necessary in the interests of justice.

Pa.R.Crim.P. 564.

We have previously stated that the purpose of Rule 564 is to ensure that a defendant is fully aware of the charges against him and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. We apply the following test:

> Whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa. Super. 2006), citing

*Commonwealth v. Davalos*, 779 A.2d 1190, 1194 (Pa. Super. 2001)

(citation omitted).

Here, the trial court permitted different offenses to be charged through

the amendment of the information. The additional charges of possession of

drug paraphernalia and possession of a small of marijuana rely on different

elements than criminal homicide. Based on this, it would appear that the

amendment of the information was improper However, relief may not be

available unless the amendment causes prejudice to the defendant. *See*

*Commonwealth v. Page*, 965 A.2d 1212, 1224 (Pa. Super. 2009).

> Since the purpose of the information is to apprise the defendant of the charges against him so that he may have a fair opportunity to prepare a defense, our Supreme Court has stated that following an amendment, relief is warranted only when the variance between the original and the new charges prejudices an appellant by, for example, rendering defenses which might have been raised against the original charges ineffective with respect to the substituted charges. Factors that we must consider in determining whether a defendant was prejudiced by an amendment include: (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Sinclair*, 897 A.2d at 1223 (citations omitted).

In this case, Thomas cannot demonstrate prejudice. On March 23, 2013, the Commonwealth filed a pre-trial motion seeking clarification on a variety of evidentiary issues, in particular, the admissibility of the marijuana and related paraphernalia in Thomas' possession at the time of the shooting. A pre-trial conference took place on July 31, 2013. At the conference, there was a discussion regarding the admissibility of the marijuana and related paraphernalia, and the Commonwealth made an oral motion to amend the information to include those charges. The trial court did not make a ruling on the Commonwealth's oral motion at that time.

Thereafter, in preparation for trial, the parties entered into discussions regarding trial stipulations, which included a stipulation concerning the lab reports relating to the marijuana. The lab reports were provided to the defense during discovery. On September 13, 2013, the Commonwealth and Thomas's counsel reached an agreement to stipulate to the findings of the lab reports rather than bring in expert witnesses.

The trial court finally ruled on the Commonwealth's motion to amend the information on January 13, 2015, the day trial began. The court permitted the amendment and allowed the evidence of marijuana and related paraphernalia to be admitted.

Based on the foregoing, we cannot say that Thomas was prejudiced by the amendment to the information. Thomas was aware of the existence of the marijuana and paraphernalia evidence, as well as the Commonwealth's intention to amend the information, nine months before trial was scheduled

to commence. There was no surprise for the defense as the Commonwealth had made it abundantly clear of its intent to introduce the evidence in question. Both parties proceeded through jury selection and the commencement of trial without knowing for certain whether the lower court would allow the drug evidence to be admitted. Accordingly, both sides were in the same position regarding trial preparation and strategy.

Thomas argues that by the time the court ruled on the amendment, there was no time to prepare a new defense or hire an expert to testify regarding the effects of marijuana on decision-making.[4] As we previously explained, both parties were aware of the possibility of the addition of drug charges and should have prepared accordingly.

Therefore, we discern no error of law or abuse of discretion by the trial court in its decision to amend the information and admit the drug related evidence. *Commonwealth v. Womack*, 453 A.2d 642, 645 (Pa. Super. 1982) (if no showing of prejudice, amendment of information to add additional charge is proper even on day of trial).

In his third issue, Thomas argues that the trial court erred when it denied his request for a new trial due to the Commonwealth's failure to

---

[4] It is noteworthy that Thomas took the stand in his own defense and admitted to possessing a small amount of marijuana and related paraphernalia.

provide evidence of Alvarez's prior bad acts. The record belies Thomas' argument.

"[S]uppression by the prosecution of favorable evidence to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Commonwealth v. Brady*, 373 U.S. 83, 87 (1963). "To establish a *Brady* violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." *Commonwealth v. Haskins*, 60 A.3d 538, 547 (Pa. Super. 2012). Further,

> The burden rests with the defendant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. The withheld evidence must have been in the exclusive control of the prosecution at the time of trial. No *Brady* violation occurs when the defendant knew, or with reasonable diligence, could have discovered the evidence in question. Similarly, no violation occurs when the evidence was available to the defense from a non-governmental source.

*Id.*

Here, the record indicates that the existence of the Florida[5] records relating to Alvarez's prior bad acts was disclosed by the Commonwealth as

---

[5] Shortly after the shooting, the Susquehanna County District Attorney's Office received an unsolicited phone call from a Miami, Florida prosecutor
*(Footnote Continued Next Page)*

early as March 23, 2013, in its motion for pre-trial conference. At the pre-trial conference held on July 31, 2013, the defense was again apprised of the existence of the Florida records relating to Alvarez. Accordingly, Thomas' argument that the Commonwealth withheld information is meritless.

Furthermore, even if Thomas had Alvarez's Florida records, the evidence of Alvarez's prior bad acts was not relevant under the circumstances. The evidence was not relevant because Alvarez was unarmed and Thomas did not know Alvarez, or of his aggressive tendencies, at the time of the shooting.

Judgment of sentence affirmed.

Judge Allen joins the Memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2015

_(Footnote Continued)_ ───────────

relating to Alvarez. The records indicate that Alvarez had previous criminal convictions for crimes of violence.